Mayore Estates LLC v Century 21 Inc. (2023 NY Slip Op 05689)

Mayore Estates LLC v Century 21 Inc.

2023 NY Slip Op 05689

Decided on November 14, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 14, 2023

Before: Renwick, P.J., Webber, Singh, Rodriguez, Higgitt, JJ. 

Index No. 656373/20 Appeal No. 17208 Case No. 2022-02097 

[*1]Mayore Estates LLC, et al., Plaintiffs-Appellants-Respondents,
v
Century 21 Inc., Defendant-Respondent-Appellant.

Holwell Shuster & Goldberg LLP, New York (James M. McGuire of counsel), for appellants-respondents.
Rivkin Radler LLP, Uniondale (Evan Krinick of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Andrew S. Borrok, J.), entered on or about April 18, 2022, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion for summary judgment and granted defendant's motion to dismiss insofar as, in effect, declaring that the retail lease terminated according to its terms and the springing lease came into effect immediately according to its terms, unanimously affirmed, with costs.
The motion court properly construed the parties' unambiguous agreements to give effect to all of their terms and made several material findings in defendant's favor (see Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951, 954 [1989]). Contrary to plaintiffs' contention, nothing in the parties' "4-5-6" lease for the fourth through sixth floors of the building disturbed the operation of the earlier-executed springing lease, which came into effect upon the termination of the retail lease for the ground floor and certain other levels of the building (Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46 [1956] ["no provision of a contract should be left without force and effect"]).
To be sure, article 89(f) of the 4-5-6 lease required the retail lease to be renewed simultaneously with the 4-5-6 lease, and, under article 89(j), the failure to do so resulted in the termination of the retail lease. However, despite the provision in 89(j) that the retail lease would automatically terminate upon the failure to timely exercise renewal, the termination here did not occur prematurely. Rather, it occurred "at the end of its then current term of the leasing of the retail space." Thus, the retail lease expired pursuant to its own terms, permitting the term of the springing lease to commence. Accordingly, the motion court gave effect to the terms of each of the three agreements by finding that when defendant failed to renew the retail lease and 4-5-6 lease simultaneously, the retail lease terminated and the springing lease came into effect immediately (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004] ["when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms"] [internal quotation marks omitted]).
Had the parties intended to displace the significant rights and obligations contained in the springing lease by entering into the 4-5-6 lease, they could have stated so expressly but did not, and plaintiffs provide no basis for reading such an additional term into any of the agreements (id.). Any challenge to defendant's right to become a direct tenant under the retail lease as required by the springing lease was expressly resolved in a settlement dated May 11, 2007. Therefore, plaintiffs' argument that the attornment provision of the springing lease was a condition precedent to it taking effect is a nullity and does not affect our interpretation of the springing lease.
Plaintiffs' contention that the motion court improperly determined that [*2]the retail lease "sprang back to life," resulting in two different leases governing the premises, misapprehends section 2.1 of the springing lease, which states "the term of this Lease shall commence on the calendar day immediately following the expiration of the Existing Lease" (emphasis added). As indicated above, by operation of article 89 of the 4-5-6 lease, the retail lease terminated, and, by operation of sections 1 and 2 of the springing lease, a new tenancy arose governed by the springing lease. Plaintiffs' dissatisfaction with that result derived from the unambiguous terms of the agreements does not render it absurd.
We have considered plaintiffs' remaining contentions and find them unavailing.
The Decision and Order of this Court entered herein on May 30, 2023 is hereby recalled and Vacated (see M-2023-02929 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 14, 2023